JOSEPH B. THOMAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110986. Promulgated June 22, 1943.

*I. Bernard Halpern, Esq.,* for the petitioner.
*James A. Taylor, Esq.,* for the respondent.

OPINION.

LEECH, *Judge:* Respondent now concedes that petitioner sustained a loss in the admitted amount of the moneys he furnished to Pylac. His position apparently is, however, that these advances were a capital investment in the form of "rights to * * * receive [Pylac] shares" which became worthless during the tax year, and that the resulting loss was therefore a capital loss, the deductibility of which is limited by section 117 of the Revenue Act of 1938. See section 23 (g)(1), (2), and (3) of that act.

Petitioner opposes this position. He contends that his admitted advancements constituted a loan which thus created a debt from Pylac to him, the whole of which became deductible in the tax year under section 23 (k) (2) and (3) of the same revenue act. The single issue therefore is whether by virtue of petitioner's advances to Pylac he became a creditor of or an investor in that company.

The difference between loans to and investments in corporations has been discussed many times by the courts and the Board of Tax Appeals, now this Court. See among others, *American Cigar Co.* v. *Commissioner*, 66 Fed. (2d) 425; *Daniel Gimbel*, 36 B. T. A. 539; *Commissioner* v. *O. P. P. Holding Corporation*, 76 Fed. (2d) 11, affirming 30 B. T. A. 337; *United States* v. *South Georgia Railway Co.*, 107 Fed. (2d) 3, and cases cited therein. We think nothing will be gained here by repeating or attempting to add to that discussion. The decision of the dispute rests necessarily upon the facts revealed in this record. *In re McLean-Bowman Co.*, 138 Fed. 181. There is some superficial evidence that the advances were loaned to Pylac. Though

neither the books nor the balance sheets of that company are in evidence, its bookkeeper gave petitioner statements on which petitioner's advances were carried as liabilities with accounts receivable. But this treatment is certainly not conclusive. *Doyle* v. *Mitchell Bros. Co.*, 247 U. S. 179. And whatever weight to which it might be entitled under some circumstances is, at least, largely reduced here by its setting, which includes the denial by Pylac that petitioner s advances were loans, in the unfinished litigation in New Jersey involving that specific question. This same circumstance similarly affects any evidentiary value in the belated corporate resolution of December 21, 1938. Moreover, petitioner was not a lender of money. He was an "organizer." Petitioner never knew McCulloch before their meeting in connection with the car wash proposition. He received no note of Pylac or any other evidence of indebtedness, unless the tardy resolution may be considered as such. No provision was made for the payment of interest. No date for the payment of the so-called advances was fixed. Petitioner admits having received no security other than the business itself, the value of which petitioner must have known as highly speculative.

On the other hand, the evidence, we think, is convincing that petitioner's advances were contributions to the capital of and not loans to Pylac. Petitioner was a shareholder in Pylac. In fact he was a half owner of the equity in that company. True, none but qualifying shares had been issued, but he was entitled to receive half of these shares when issued. Thus, the value of that equity would reflect any contribution he made to the capital of the company. To be noted also is the fact that, so far as the record reveals, unless these advances of petitioner were capital contributions, Pylac was actually incorporated without paid-in capital. But under the law of New Jersey, the state of its incorporation, that was legally impossible. N. J. S. A. 14 : 2. 3. We can not presume it violated that law. *Bank of United States* v. *Dandridge*, 25 U. S. 64.

The essence of the situation was that McCulloch agreed to and did furnish technical knowledge and services, and petitioner supplied the funds with which to develop and market the car wash. In exchange for these respective contributions, McCulloch and petitioner were each to receive half the issued stock of Pylac. We hold, therefore, that petitioner's admitted advances were contributions to the capital or investments in rights to receive the stock of Pylac, which constituted a capital asset that became worthless in the taxable year. The result follows that the deductibility of the loss thus sustained must be limited in accordance with the provisions of section 117 of the Revenue Act of 1938. See section 23 (g) (1), (2), and (3) of that act.

*Decision will be entered under Rule 50.*