OPINION The petitioner deducted in his income tax returns for the following years the indicated amounts as dividends paid with respect to short sales of Webb, Mohaseo, and Cuban stocks and with respect to which the petitioner made net expenditures of the indicated amounts of which the indicated portions represent compensation to the named firms: [[Image here]] Although conceding that the dealings of the petitioner with respect to the Webb, Mohasco, and Cuban stocks “had a tax motivation,” the petitioners take the position that such dealings represented bona fide short sales of such stocks, and contend that the amounts paid by petitioner as dividends with respect to the stocks were properly deductible from gross income as dividends paid on short sales of the stocks and that the respondent erred in disallowing the deductions taken therefor in the returns for the respective years. It is now well established that deductions are a matter of legislative grace and that one who seeks a deduction must be able to point to a statute which provides for the allowance of the deduction and show that he comes within the terms of that statute. New Colonial Co. v. Helvering, 292 U.S. 435 (1934), affirming 24 B.T.A. 886 (1931); Deputy v. Du Pont, 308 U.S. 488 (1940); Interstate Transit Lines v. Commissioner, 319 U.S. 590 (1943); Empire Press, Inc., 35 T.C. 136 (1960). The petitioners have not pointed us to the provision or provisions of the Internal Revenue Code upon which they rely as granting the deductions contended for. However, provisions of the Internal Revenue Code of 1954 which grant deductions are set out below.[1] Section 162(a) provides in general for the allowance as a deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The petitioner’s trade or business during the taxable years in issue was that of electrical contracting. The petitioners have made no attempt to relate to that business the petitioner’s dealings with respect to the Webb, Mohasco, and Cuban stocks. In view of that and since we are unable to find that any relationship existed, we are without any basis for concluding that the deductions in issue were allowable as business expenses under the provisions of section 162(a). Section 212(1) provides for the allowance as a deduction of all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income. The contention of the petitioners as to the allowance of the deductions in issue rests upon the well-established rule that one who borrows securities in order to make a short sale may deduct interest or dividends payable with respect to such securities during the period of the loan where the borrower in fact pays such amounts to the lender of the securities. I.T. 3989, 1950-1 C.B. 34. Essential to the application of that rule here is a showing that there was an actual loan of such securities by a lender and that there was an actual payment to the lender by the petitioner. The burden was upon the petitioner to make such a showing, and any facts essential to such a showing which he has failed to present may not be presumed to have been favorable to him. The record shows that prior to the first short sale by petitioner of Webb stock in 1956 Hyman Federman gave petitioner a detailed explanation of what he considered to be the income tax advantages to be derived from making short sales of stocks on which there were large dividend arrearages and on which dividends had been declared in payment of all or part of such arrearages. In addition, Federman informed petitioner of the detailed procedure to be followed in effecting such short sales and the covering purchases therefor in order to obtain the explained income tax advantages. Pursuant to such explanation and information and in each instance upon the advice of Federman, the petitioner made the short sales of Webb, Mohasco, and Cuban stocks here involved. Although in his testimony he admitted he made no investigation of the financial condition and business prospects of the corporations, the stocks of which are here involved, before engaging in dealings with respect to the stocks, the petitioner, apparently in an attempt to establish the bona tides of his dealings, stated that he would have made the short sales under consideration even though the income tax benefit explained by Federman had not been present. The petitioner’s statement that absent the anticipated income tax benefit he nevertheless would have made the short sales here involved lacks corroboration in the record. At the times the petitioner entered into and was engaged in his dealings with respect to the Webb, Mohasco, and Cuban stocks, respectively, he owned no shares thereof and he never made any borrowing or delivery of any. Nor is there any showing that Sherman, during the times of its dealings with petitioner with respect to the Webb and Mohasco stocks, either owned, held, borrowed, or delivered any shares thereof with respect to its dealings with petitioner or that Blair or Hayden, during the time of their dealings with petitioner with respect to the Cuban stock, either owned, held, borrowed, or delivered any shares thereof with respect to their dealings with petitioner. The petitioner testified that as far as he was concerned his dealings with respect to the Cuban stock represented “a book transaction.” Despite the sending by Hayden of confirmations to petitioner and the petitioner’s delivery to Hayden of a check in the amount of the dividend on the Cuban stock, the fact remains that petitioner’s dealings with respect to the stock terminated by Hayden returning to petitioner the full amount of the petitioner’s check less Hayden’s charges for commissions and some other small items. In the situation presented we are of the opinion that petitioner’s dealings with respect to the Cuban stock were mere formalities and without substance and that his characterization thereof as “a book transaction” is particularly apt. In view of the factual similarity of petitioner’s dealings with Sherman with respect to the Webb and Mohasco stocks to his dealings with respect to the Cuban stock, we also are of the opinion that Iris dealings with respect to the Webb and Mohasco stocks were mere formalities and without substance and that they too may be characterized appropriately as only book transactions. From the record presented it is clear that petitioner in engaging in his dealings with respect to the Webb, Mohasco, and Cuban stocks contemplated merely net expenditures of comparatively small amounts of funds as compensation to Sherman and Blair or Hayden as compensation for their services and other small charges for which he hoped to obtain net income tax advantages which were substantially in excess of such expenditures. However, as was said in Oarl Shapiro, 40 T.C. 34 (1963): But the avoidance of taxes hardly qualifies as “the production or collection of income” under the statute [sec. 212(1)], either literally or by any implication that is supported by any relevant legislative history. In view of the foregoing we conclude that the deductions in controversy were not allowable under the provisions of section 212(1). Eeviewed by the Court. Decision will be entered for the respondent. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. — There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year— (1) for the production or collection of income;